2013-5035

## United States Court of Appeals
### for the
### Federal Circuit

**RES-CARE, INC.,**

*Plaintiff-Appellant,*

v.

**UNITED STATES,**

*Defendant-Appellee.*

*Appeal from the United States Court of Federal Claims in*
*Case No. 12-CV-0251, Senior Judge Eric G. Bruggink.*

## REPLY BRIEF OF PLAINTIFF-APPELLANT, RES-CARE, INC.

Jonathan D. Shaffer
Mary Pat Buckenmeyer
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Tysons Corner, VA 22182
Tel: (703) 847-6280
Fax: (703) 847-6312
*Attorneys for Plaintiff-Appellant,*
*Res-Care, Inc.*

May 28, 2013

# TABLE OF CONTENTS

**Page No.**

INTRODUCTION .................................................................................1

STATEMENT OF THE CASE.................................................................4

ARGUMENT ......................................................................................5

I.      De Novo Review..................................................................5

II.     DOL's Actions Violate the WIA Competition Requirements ........................5

        A.      Plain Language Prohibits Small Business Set Asides..........................6

        B.      DOL's Interpretation Renders Portions of the WIA a Nullity ..............8

        C.      The Government's Interpretation Ignores the
                Enumerated Exceptions........................................................9

        D.      The Words Around the Critical Language Further Supports
                ResCare's Interpretation .....................................................10

III.    The Agency Is Not Entitled to Deference Where Interpretation
        Conflicts With Plain Language Or Intent ....................................15

IV.     Rules Regarding Interpretation of Ambiguous Terms Supports ResCare's
        Interpretation...............................................................19

V.      The Agency Conducted an Improper Rule of Two Analysis ....................22

        A.      The COFC Improperly Excluded Highly Relevant, Material
                Evidence Necessary For Effective Judicial Review ..........................23

        B.      DOL's Interpretation Is Contrary to the FAR....................................28

VI.     The Court Erred in Failing to Grant Relief ..................................31

CONCLUSION................................................................................31

i

# <u>TABLE OF AUTHORITIES</u>

**Page No.**

**Cases**

Acrow Corp. of America v. United States,
  96 Fed. Cl. 270 (2010) ..........................................................4

Advanced Data Concepts, Inc. v. United States,
  216 F.3d 1054 (Fed. Cir. 2000) ..........................................24

Aerolineas Argentinas v. United States,
  77 F.3d 1564 (Fed. Cir. 1996) ............................... 15, 17, 18

Allied Tech. Grp., Inc. v. United States,
  92 Fed. Cl. 226 (2010) ........................................................24

Artuz v. Bennett,
  531 U.S. 4 (2000) ................................................................17

Arzio v. Shinseki,
  602 F.3d 1343 (Fed. Cir. 2010) ..........................................19

AshBritt, Inc. v. United States,
  87 Fed. Cl. 344 (2009) ..........................................................4

AT&T Corp. v. United States,
  76 Fed. Cl. 297 (2007) ........................................................16

Axiom Res. Mgmt., Inc. v. United States,
  564 F.3d 1374 (Fed. Cir. 2009) ............................... 5, 23, 24

Carpenter v. Principi,
  327 F.3d 1371 (Fed. Cir. 2003) ..........................................19

ii

Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.,
    467 U.S. 837 (1984)......................................................................6, 16

Cowart v. Nicklos Drilling Co.,
    505 U.S. 469 (1992).........................................................................6

CYIOS, Inc.,
    B-402728.3, 2012 CPD ¶ 205 (July 13, 2012) ........................... 27, 30

Delex Sys., Inc.,
    B-400403, 2008 CPD ¶ 181 (Oct. 8, 2008) ......................... 26, 27, 29

Duncan v. Walker,
    533 U.S. 167 (2001).........................................................................8

EMMES Corp.,
    B-402245 et al., 2010 CPD ¶ 53 (Feb. 17, 2010) ..............................27

Espey Mfg. & Elec. Corp.,
    B-254738, B-254738.3, 94-1 CPD ¶ 180 (Mar. 8, 1994)..................23

Genisco Tech. Corp. v. Stone,
    793 F. Supp. 357 (D.D.C. 1992)................................................ 21, 23

GHS Health Maint. Org., Inc. v. United States,
    536 F.3d 1293 (Fed. Cir. 2008) ................................................ 15, 19

Impresa Construzioni Geom. Domenico Garufi v. United States,
    238 F.3d 1324 (Fed. Cir. 2001) .......................................................5

Info. Ventures, Inc.,
    B-294267, 2004 CPD ¶ 205 (Oct. 8, 2004) ......................................27

Linc Gov't Servs., LLC v. United States,
    96 Fed. Cl. 672 (2010) ............................................................. 24, 25

Mallard v. U.S. Dist. Court,
    490 U.S. 296 (1989)...............................................................................6

Med-South, Inc.,
    B-401214, 2009 CPD ¶ 112 (May 20, 2009)......................................26

Meeks v. West,
    216 F.3d 1363 (Fed. Cir. 2000) ..........................................................20

MG Altus Apache Co. v. United States,
    102 Fed. Cl. 744 (2012) ......................................................................24

Morton v. Mancari,
    417 U.S. 535 (1974).............................................................................22

Mudge v. United States,
    308 F.3d 1220 (Fed Cir. 2002) ...........................................................17

Nat'l Ass'n of Regulatory Util. Comm'rs v. U.S. Dep't of Energy,
    680 F.3d 819 (D.C. Cir. 2012).............................................................30

Perry v. Martin Marietta Corp.,
    47 F.3d 1134 (Fed. Cir. 1995) ............................................................16

PlanetSpace v. United States,
    90 Fed. Cl. 1 (2009).........................................................................4, 30

Pub. Emps. Ret. Sys. v. Betts,
    492 U.S. 158 (1989).............................................................................16

RhinoCorps Ltd. Co. v. United States,
    87 Fed. Cl. 261 (2009).........................................................................26

iv

Ruchman & Assocs., Inc.,
     B-275956, 97-1 CPD ¶ 147 (Apr. 23, 1997) ......................................................23

Seattle Sec. Servs. v. United States,
     45 Fed. Cl. 560 (1999) ................................................................................ 24, 25

Sunrise Int'l Grp., Inc.; Specialized Contract Servs., Inc.,
     B-254875, B-254875.2, 94-1 CPD ¶ 39 (Jan. 25, 1994) ....................................23

TRW Inc. v. Andrews,
     534 U.S. 19 (2001) ...........................................................................................8

United States v. Mead Corp.,
     533 U.S. 218 (2001) ........................................................................................16

Vanguard Recovery Assistance v. United States,
     99 Fed. Cl. 81 (2011) ......................................................................................25

Ventas, Inc. v. United States,
     381 F.3d 1156 (Fed. Cir. 2004) ...................................................................8, 10

## Regulations

FAR 9.104 ..................................................................................................................29
65 Fed. Reg. 49294, 49295 (Aug. 11, 2000) ...........................................................6
DOLAR 2919.502 ......................................................................................................15
FAR 15.304(c)(3) .......................................................................................................25
FAR 19.502 ....................................................................................................... passim
FAR 9.104 ..................................................................................................................27
FAR Part 1529

## Statutes

15 U.S.C. § 638, 644 ............................................................................13

20 C.F.R. § 670.310 ..................................................................... 17, 18

20 C.F.R. § 670.320 ...............................................................................17

20 C.F.R. §§ 670.300-320 ....................................................................15

28 U.S.C. § 1491(b)(1) ..........................................................................17

29 U.S.C. § 2887 .......................................................................... passim

29 U.S.C. § 2939 ........................................................................... 17, 18

29 U.S.C. §§ 2801 ...................................................................................2

41 U.S.C. § 152 .....................................................................................12

41 U.S.C. § 3301 ........................................................................... 12, 14

41 U.S.C. § 3302 ...................................................................................12

41 U.S.C. § 3303 .......................................................................... passim

41 U.S.C. § 3304 .......................................................................... passim

## Other Authorities

2A Norman J. Singer & J.D. Shambie Singer, <u>Sutherland Statutory Construction</u>
§ 46.1, Plain Meaning Rule (7th ed. 2011) .........................................6

3A Norman J. Singer & J.D. Shambie Singer, <u>Sutherland Statutory Construction,</u>
§ 74.8 (6th ed., Supp. 2009) ..............................................................10

S. REP. NO. 105-109 at 1-2 (1997) ...................................................5, 14

S. REP. NO. 105-109 at 60 (1997) ...........................................................7

Workforce Investment Act, Pub. L. No. 105-220, 112 Stat 935 ...............2

Workforce Investment Act, 65 F.R. 49294-01 (Final Rule August 11, 2000) ........14

**REPLY BRIEF OF PLAINTIFF-APPELLANT, RES-CARE, INC.**
_____

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**
_____

2013-5035
_____

RES-CARE, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.
_____

Appeal from the United States Court of Federal Claims in
Case No. 12-CV-0251, Senior Judge Eric G. Bruggink.
_____

Pursuant to Federal Rules of Appellate Procedure 28(c), Plaintiff-Appellant Res-Care, Inc. ("ResCare"), by counsel, respectfully submits this reply brief to Defendant-Appellee's Principal Brief ("Govt. Bf.").

## <u>INTRODUCTION</u>

ResCare is the successful incumbent operating the United States Department of Labor ("DOL") Blue Ridge Job Corps Center ("Blue Ridge Center" or "the Center") since 1998.  Under ResCare stewardship, the Center has substantially improved performance and is one of the highest rated DOL Job Corps Centers ("JCCs").  A1035, A1079, A1101.

1

Contrary to statute and regulation, DOL restricted competition by designating the new Blue Ridge Center follow-on acquisition as a small business set aside. This precludes ResCare, a large business, from competing. A1014, A1037, A1078. ResCare is materially prejudiced by the agency's unlawful action. ResCare has a reasonable possibility of receiving contract award if it is not improperly excluded.

The United States Court of Federal Claims ("COFC") erred as a matter of law in holding that the Workforce Investment Act ("WIA"), Pub. L. No. 105-220, 112 Stat. 935, as amended and codified at 29 U.S.C. §§ 2801 et seq., permits large businesses, such as the incumbent contractor ResCare, to be excluded from competition for the Blue Ridge Center. The WIA provides precise rules governing JCC operator selection. The WIA competition exceptions are more precise and narrower than the general terms provided in the Competition in Contracting Act ("CICA"). The plain language of the WIA only permits three enumerated exceptions, all related to special sole source needs. The DOL did not rely on these permitted sole source exceptions, but instead restricted competition to small businesses only based on an exception not permitted by the WIA.

The WIA is clear and unambiguous in requiring competition subject to only three exceptions. The COFC interpretation improperly renders critical language a surplusage. The WIA should be interpreted to give effect to all of its parts.

Even if the meaning of the WIA is somehow considered ambiguous, the rules of statutory construction preclude restricting competition. The words around the WIA competition requirement support ResCare's interpretation that it does not allow DOL to restrict competition based on an exception outside those enumerated. The specific requirements of the WIA take precedence over the more general requirements of CICA.

DOL's interpretation is not entitled to deference. The statute is clear and unambiguous. In any event, the Federal Acquisition Regulation ("FAR") and the Department of Labor Acquisition Regulation ("DOLAR") do not provide an exception to the statutory WIA competition requirements.

The COFC also erred by failing to find that the agency conducted an improper "Rule of Two" analysis. The COFC improperly excluded from the administrative record ("AR") the Rell & Doran Report (the "Report") and the Richard Myers declarations that demonstrate small business performance problems on JCC contracts and the harm to ResCare and the JCC students being served. The agency contracting officer ("CO") knew or should have known the factual details provided in the Report and the declarations, but arbitrarily failed to consider them. The agency's set aside decision was arbitrary because it ignored highly relevant, material evidence. If the agency had considered this material, it would not have decided to exclude large businesses.

3

## STATEMENT OF THE CASE

The Government's Statement of the Case (at 2) asserts that it addresses "numerous incorrect and incomplete descriptions of the proceedings."  However, other than disagreeing about whether the Report and the declarations should be included in the record, the Government does not identify any alleged incorrect facts.

The Government (at 4) asserts that ResCare relied "almost wholly" on the Report and declarations "to support the merits of its motion for judgment on the administrative record."  The Government confuses two separate protest grounds. ResCare's protest that the DOL decision to restrict competition was contrary to the WIA does not rely on the Report or the declarations.  They are only relevant to ResCare's alternative argument regarding the Rule of Two and the injunctive relief factors of harm to ResCare, the students and the public.  See Section V.A, infra. Of course, material related to the injunctive relief factors regarding harm are not included in the AR in any event.[1]  Govt. Bf. 4.

---

[1] The Court record includes materials relevant to the injunctive relief factors other than success on the merits.  PlanetSpace, Inc. v. United States, 90 Fed. Cl. 1, 5 (2009); AshBritt, Inc. v. United States, 87 Fed. Cl. 344, 366-67 (2009); Acrow Corp. of America v. United States, 96 Fed. Cl. 270, 271-72 (2010).

## ARGUMENT

### I.     De Novo Review

The primary issues presented in this appeal are statutory and regulatory

interpretation, questions of law, that this Court reviews de novo and without

deference.  Govt. Bf. 9.  Impresa Construzioni Geom. Domenico Garufi v. United

States, 238 F.3d 1324, 1330 (Fed. Cir. 2001).

Under Axiom, fact findings are reviewed under the abuse of discretion

standard.  Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1378 (Fed. Cir.

2009).  However, the COFC's failure to follow the Axiom standard for

supplementation should be reviewed under the de novo standard as an error of law.

In the alternative, the COFC abused its discretion when it excluded evidence

contrary to Axiom).  See Section V.A, infra.

### II.     DOL's Actions Violate the WIA Competition Requirements

The WIA is a highly specific statute intended to remedy serious problems

related to JCC operations.  A1005-06, 1073-76.  Congress found that the Job Corps

program was a "job training system [that was] no system at all."  See S. REP. NO.

105-109 at 1-2 (1997).  The existing system lacked accountability, caused

widespread confusion and resulted in "frustration at the breaking point."  Id. at 2.

The Congressional response to this failed system was the establishment of a single

comprehensive new program authorizing states, localities and the local business

5

community to work together to address the needs of young, at-risk job seekers and employees.  Id. at 2-3.  Congress established special provisions governing the selection of entities to operate JCCs.  29 U.S.C. § 2887(a).  The WIA requires competition to ensure the best entities are chosen to operate JCCs.  DOL characterized these changes as "pivotal" and not "business as usual."  65 Fed. Reg. 49294, 49295 (Aug. 11, 2000).

The WIA mandate that DOL award JCC contracts on a competitive basis is subject only to three enumerated exceptions, none of which is the CICA small business set aside exception.  See 29 U.S.C. § 2887(a)(2)(A) .

## A.     Plain Language Prohibits Small Business Set Asides

A basic tenet of statutory construction is that when statutory language is plain, it controls.  See Mallard v. U.S. Dist. Court, 490 U.S. 296, 300-02 (1989); see also 2A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 46.1, Plain Meaning Rule (7th ed. 2011).  Courts interpreting a statute must look first to the literal language and apply the words as written.  See, e.g., Cowart v. Nicklos Drilling Co., 505 U.S. 469, 475 (1992).  In Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc., the Supreme Court held that "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  467 U.S. 837, 842-43 (1984).

6

The Government relies on numerous policy arguments and phrases not found in the WIA and improperly grafts onto the WIA an exception from competition for small business.  The Government improperly ignores the plain language of the WIA.  Govt. Bf. 11-20.

Congress explicitly identified a broad range of public, quasi-public and private entities eligible to operate JCCs:

> The Secretary shall enter into an agreement with a Federal,
> State, or local agency, an area vocational education school
> or residential vocational school, or a private organization,
> for the operation of each Job Corps Center.

29 U.S.C. § 2887(a)(l)(A).[2]

Congress mandated that the DOL award JCC contracts on a competitive basis, with three narrow exceptions.  The WIA states unequivocally:

> (A)  ***Competitive basis***
>
> ***Except as provided in subsections (a) to (c) of section 3304
> of title 41, the Secretary shall select on a competitive basis
> an entity to operate a Job Corps center*** and entities to
> provide activities described in this subchapter to the Job
> Corps center.

29 U.S.C. § 2887(a)(2)(A) (emphasis added).  For WIA procurements, the only exceptions are CICA Sections 3304(a) to (c).  These exceptions cover: special

---

[2] The Senate Committee Report states that this provision "[d]escribes the eligibility criteria for entities who want to run or provide services to Job Corps centers. Operators and Service Providers are selected on a competitive basis." See S. REP. No. 105-109 at 60 (1997).  There are conspicuously *no* references to set-asides in the legislative history.

source requirements, sole sources, and urgent and compelling circumstances. There is no dispute that these three exceptions do not include the CICA size based restrictions at 41 U.S.C. § 3303(b).

The CICA size exception at 41 U.S.C. § 3303(b) is plainly not applicable to the WIA, since the only WIA exceptions from competition are those provided in 41 U.S.C. § 3304(a) to (c).  29 U.S.C. §§ 2887(a)(2)(A).

The COFC erred in expanding the range of WIA exceptions.  "Where Congress includes certain exceptions in a statute, the maxim *expressio unius est exclusio alterius* presumes that those are the only exceptions Congress intended." Ventas, Inc. v. United States, 381 F.3d 1156, 1161 (Fed. Cir. 2004); TRW Inc. v. Andrews, 534 U.S. 19, 28 (2001).

The COFC and the Government erroneously argue that the three exceptions from competition in the WIA should actually be expanded to at least four.  A0018-19.  When a statute specifically identifies enumerated exceptions, the Court cannot rewrite the statutory language by adding additional exceptions.

## B.    DOL's Interpretation Renders Portions of the WIA a Nullity

It is the Court's "duty to give effect, if possible, to every clause and word of a statute."  Duncan v. Walker, 533 U.S. 167, 174 (2001) (internal citations and quotations omitted).  Thus, the Court should be "thus reluctant to treat statutory terms as surplusage in any setting."  Id.

The Government erroneously argues (at 20) that the words "except as provided in subsections (a) to (c) of Section 3304" are not surplusage under its interpretation.  Under the COFC's and DOL's interpretation, the WIA's words "Except as provided in subsections (a) to (c) of section 3304 of title 41" are surplusage or a nullity since, despite this clear language, according to the COFC and DOL, all of the CICA exceptions apply without limitation.  A0016.  The COFC's decision rests on a reading of the WIA and CICA together that interprets the WIA as if the exception clause were omitted or reads "Except as provided in subsections (a) to (c) of section 3304 and *section 3303* of title 41."  Of course, the phrase "section 3303" is not in WIA.

If, as the COFC found, all of the CICA restrictions implicitly apply to WIA, then there was no need for Congress to say anything in WIA regarding the exceptions at 3304(a) to (c), since, under the COFC and the Government's interpretation, those restrictions would apply automatically in any event.  Instead, Congress expressly included the "except" clause with only three enumerated exceptions.

## C.    The Government's Interpretation Ignores the Enumerated Exceptions

"As a general rule, enumerated exceptions in a statute indicate a legislative intent that the statute be applied to all cases not specifically excepted."  3A Norman J. Singer & J.D. Shambie Singer, <u>Sutherland Statutory Construction</u>,

9

§ 74.8 (6th ed., Supp. 2009).

By referencing only the CICA exceptions in 41 U.S.C. 3304(a) to (c), and by excluding any reference to the companion CICA exception in 41 U.S.C. § 3303(b) (i.e., small business set asides), Congress explicitly indicated its intent *not* to adopt or permit that exception in WIA JCC procurements.

"Where Congress includes certain exceptions in a statute, the maxim *expressio unius est exclusio alterius* presumes that those are the only exceptions Congress intended."  See Ventas, 381 F.3d at 1161.  WIA contains only three exceptions from competition (41 U.S.C. § 3304(a) to (c)), the only three Congress intended by the WIA's plain language.

### D.    The Words Around the Critical Language Further Supports ResCare's Interpretation

The Government (at 14-17) argues the Court should apply *noscitur a sociis*, counseling that a word "gathers meaning from the words around it."  But the Court need not reach this cannon since, as discussed above and in ResCare's brief, the plain meaning is clear.

In any event, application of *noscitur a sociis* favors ResCare's interpretation. The words around WIA Section 2887(a)(2)(A) require that the procurement be conducted on a competitive basis from eligible entities subject only to the three enumerated exceptions.

The rest of the WIA words further support ResCare's interpretation. The WIA identifies four factors that DOL shall consider in selecting a JCC operator. See 29 U.S.C. § 2887(a)(2)(B). Those four factors do not permit DOL to discriminate between small and large businesses. Id.

In an attempt to sidestep the relevant language, the Government relies on a comparison of the phrase "competitive basis" in WIA to "competitive" or "competitive procedures" in CICA. The Government's arguments (at 11-12) are misplaced. The DOL must award a JCC operation contract on a competitive basis except under the three enumerated exceptions.

The COFC and the Government (at 13) erroneously argue that ResCare's arguments only succeed if small business set asides are considered non-competitive. A0015-16. Set asides are a limit on competition since they expressly exclude an entire class of potential contractors covered by the WIA – that is, large business contractors. If Congress had intended to include the small business exception in the WIA, the WIA would have listed CICA Section 3303(b) among the enumerated exceptions.

Congress did not use the existing CICA-defined term "competitive procedures" in the WIA. Congress mandated that DOL select a contractor on a "competitive basis" from among "eligible entities." 29 U.S.C. § 2887(a). The COFC and the Government improperly rely solely on the term "competitive basis,"

ignoring other material terms.  A0020.  WIA must be interpreted as a whole giving effect to all terms and not rendering critical language a nullity.

Further, ResCare has not argued that small business set asides are not "competitive."  A0015.  Congress established a special procurement method for JCC operators that requires *all* eligible entities to be chosen on a competitive basis subject to only three enumerated exceptions.  Large businesses are eligible entities.

ResCare is not arguing that the term "competitive basis" in WIA must mean "full and open competition" as defined in CICA.  A0016.  Rather, the "except" clause in the WIA must be given effect.  Significantly, there is a parallel between the exceptions in WIA and CICA.  The three WIA enumerated exceptions are identified as subsections (a) to (c) of Section 3304 of Title 41.  CICA provides a much broader list of exceptions "except as provided in Sections 3303, 3304(a) and 3305…."  Congress knows how to list enumerated exceptions.  41 U.S.C. § 3301(a).

The Government argues (at 14-15) that the phrase "competitive basis" in the WIA should be interpreted to mean "competitive procedure" as provided in the CICA at Section 3301(a).  A0017.[3]  The Government then bootstraps this argument to contend that set asides are permitted under the WIA since the CICA definition

---

[3] The Government erroneously argues that ResCare did not raise the Section 3301(a) argument below.  ResCare raised that in its Motion for Judgment (A1088), although ResCare noted in its Reply below (A1126) that it had inadvertently erred in providing section number 3302(a) instead of the actual number 3301(a).

of "competitive procedure" includes set asides.  CICA, however, only includes set asides in a definition of "competitive procedures" because CICA includes a specific competition exception for set asides.  41 U.S.C. § 3303(b).  As discussed above, the WIA does not include Section 3303(b) as one of its enumerated exceptions.

The Government argues that CICA's structure demonstrates that Section 3303(b) describes a competitive procedure.  Govt. Bf. 16.  But CICA's structure does the opposite, supporting ResCare's position.

The heading of CICA section 3303 and subsection 3303(b) refer to "exclusion," that is, a restriction or limit on competition.  Section 3303(b) expressly provides for a competition restriction (i.e., "excluding other than small business concerns").  Congress recognized that, having mandated competition, agencies could not exclude a class of contractors without separate authorization from Congress.  Thus, Section 3303(b) is a restriction on competition as argued by ResCare.

In the WIA, Congress sought to consolidate a previously chaotic system of disparate programs into a single, comprehensive program in order to achieve the greatest possible success for the youth served.  Congress focused on empowering the states, the local and business communities and other parties to work together to

meet the needs of job seekers and employers.  See S. REP. NO. 105-109 at 2-3 (1997); 65 Fed. Reg. 49294-01 (Final Rule August 11, 2000).

Congress broadened the types of entities eligible to operate JCCs except in very limited, sole source situations.  29 U.S.C. § 2887(a).  Congress provided the widest possible range of operators to increase the likelihood of the best outcome for the economically-disadvantaged youth.  Setting aside competition to only small business contractors contravenes this clear congressional framework.

CICA also includes an acknowledgment that Congress can elect to include a different set of exceptions if it does so in a separate statute.  41 U.S.C. § 3301(a).  By referencing only the CICA exceptions in 41 U.S.C. 3304(a) to (c), and by excluding any reference to the companion CICA exception in 41 U.S.C. § 3303(b), Congress explicitly indicated its intent *not* to adopt or permit that exception in WIA JCC procurements.

The Government (at 17-18) argues that ResCare's reading of CICA is inconsistent with the Small Business Act.  The Government's arguments are unavailing.  CICA plainly allows for procurements to be set aside for small businesses.  The WIA does not.  Compare 41 U.S.C. § 3303(b) to 29 U.S.C. § 2887(a)(2)(A).  To the extent there is any possible ambiguity, the more specific WIA controls over the more general Small Business Act.  See Section IV infra.

14

Under CICA, but not the WIA, the FAR and DOLAR authorize an agency to set-aside certain procurements when the CO independently exercises discretion and determines that offers will be received from at least two responsible small business concerns and award will be made at a fair market price. FAR 19.502-2(b); DOLAR 2919.502. This is the so called "Rule of Two." These regulations are inapplicable to procurements conducted under the WIA. It is well established that a regulation cannot override a clearly stated statutory enactment. Aerolineas Argentinas v. United States, 77 F.3d 1564, 1575 (Fed. Cir. 1996); see also GHS Health Maint. Org., Inc. v. United States, 536 F.3d 1293, 1297-1300 (Fed. Cir. 2008) (regulation that contradicts the statute will not be given effect).

The fact that DOL has adopted regulations authorizing the use of small business set-asides (Govt. Bf. 10, 23) is inapposite. A0018. The Rule of Two is inapplicable since the exception to competition for set-asides is not permitted by the WIA. Since JCC procurements are conducted under the WIA, any agency regulation or policy purporting to authorize set-asides is unenforceable as contrary to statute and the plain intent of Congress.

## III. The Agency Is Not Entitled to Deference Where Interpretation Conflicts With Plain Language Or Intent

DOL's WIA regulations apply the CICA procurement procedures through the FAR to JCC procurements. 20 C.F.R. §§ 670.300-320. Although WIA makes no reference to set asides, DOL interprets WIA as permitting set aside restrictions

15

on competition.  The Government argues that DOL's interpretation should be entitled to deference.  DOL, however, has no authority to interpret WIA contrary to its plain language.  United States v. Mead Corp., 533 U.S. 218, 226-27 (2001).

The Government argues (at 18, 21) that DOL regulations that require officials to apply FAR requirements such as the Rule of Two, are entitled to deference.  The WIA, however, provides only limited regulatory authority.  DOL lacks authority to promulgate regulations contrary to statutory terms.

The COFC and the Government erred in concluding that the agency is automatically entitled to deference because the statute is allegedly ambiguous.  Govt. Bf. 21 (citing A0014, A0018).

To the contrary, an agency interpretation is not entitled to deference where the plain meaning of the statute is clear (Pub. Emps. Ret. Sys. v. Betts, 492 U.S. 158, 171 (1989)) or where the agency's interpretation conflicts with the plain meaning of the statute (Chevron, 467 U.S. at 842-43).

The WIA is not ambiguous.  Small business set asides are not permitted.  In any event, the DOL interpretation is not entitled to deference because the issue before the Court does not depend on any particular DOL expertise.  Congress did not grant DOL unfettered authority to interpret the WIA.  See Perry v. Martin Marietta Corp., 47 F.3d 1134, 1137 (Fed. Cir. 1995); AT&T Corp. v. United States, 76 Fed. Cl. 297, 305 n.8 (2007).  In a bid protest, the Court can find that an

agency decision to follow a regulation in connection with a procurement contrary to statute is improper and must be reversed. 28 U.S.C. § 1491(b)(1).

The COFC further erred (at A0018) by relying on 20 C.F.R. §§ 670.310 and 670.320 because these regulations provide no broad grant of authority to implement the WIA and cannot override the statute. Aerolineas, 77 F.3d at 1575. These regulations merely state how entities are selected to receive funding and cite only generally to the Federal Property and Administrative Services Act, the FAR and the DOLAR. Contrary to the Government's argument (at 23-24), 20 C.F.R. §§ 670.310 and 670.320 cannot trump the WIA.

The COFC failed to properly construe 29 U.S.C. § 2939(a). A0018. Congress limited DOL's ability to interpret WIA or alter WIA's language for policy reasons. See, e.g., Mudge v. United States, 308 F.3d 1220, 1232 (Fed Cir. 2002) ("'Whatever merits these and other policy arguments may have, it is not the province of this Court to rewrite the statute to accommodate them.'" (quoting Artuz v. Bennett, 531 U.S. 4, 10 (2000)).

In the WIA, Congress expressly withheld all substantive and interpretive rulemaking authority from DOL. Section 2939(a) provided an extremely narrow delegation of authority regarding JCC procurements. DOL is allowed to issue regulations "to carry out this chapter *only to the extent necessary to administer and ensure compliance with the requirements of this chapter.*" 29 U.S.C. §

2939(a) (emphasis added). DOL regulations must be read consistent with and cannot exceed the scope of the WIA.

DOL lacks authority to substantively modify or interpret 29 U.S.C. § 2887(a). Any DOL attempt to restrict competition beyond the three enumerated exceptions would be *ultra vires.*

DOL's determination to restrict competition is also inconsistent with paragraph 670.310(c)(3), which identifies four factors DOL shall consider in selecting an entity to operate a JCC. Under the four factors, exclusion of ResCare is improper; ResCare is the offeror most familiar with the surrounding community since ResCare has served as the Blue Ridge operator since 1998. ResCare has exemplary past performance and has demonstrated the ability to carry out JCC requirements at this exact Center.

DOL erroneously asserts that the factors are only relevant after proposals are received. The factors are mandatory considerations when the agency structures its procurement aimed at selecting a JCC contractor. The agency cannot ignore them when it makes a decision on procurement structure, such as excluding a class of businesses.

The Government erroneously asserts (at 24) that ResCare cannot rely on Aerolineas, 77 F.3d at 1575 because that case is not a bid protest and did not directly challenge the validity of a regulation. The Court has authority in a protest

18

to find that a procurement decision is improper where it relies on a regulation contrary to a clearly stated statute.  See, e.g., GHS Health, 536 F.3d at 1297-1300.

## IV.   Rules Regarding Interpretation of Ambiguous Terms Supports ResCare's Interpretation

Even if the WIA were ambiguous, the rules of interpretation of ambiguous terms support ResCare's interpretation.  "[A] specific statute takes precedence over a more general one."  Arzio v. Shinseki, 602 F.3d 1343, 1347 (Fed. Cir. 2010); see also Carpenter v. Principi, 327 F.3d 1371, 1374 (Fed. Cir. 2003) (same).

The WIA is significantly more specific than the general CICA.  CICA applies to procurements Government-wide.  In sharp contrast, the relevant WIA language applies only to JCC procurements.  This substantially smaller subset of procurement was deemed by Congress to require special rules that take precedence over the more general CICA.

The Government inconsistently argues (at 25) that various portions of the WIA should be interpreted independently.  This appears inconsistent with the Government's earlier reliance (at 14-17) on *noscitur a sociis*.  In any event, the various sections of the WIA all support the conclusion that the only limits on competition are the three enumerated exceptions.

The WIA also includes four factors the DOL must consider when selecting an eligible JCC operator.  29 U.S.C. § 2887(a)(2)(B).  None of these factors permits DOL to discriminate between large and small businesses.  The

19

Government, however, argues (at 25) that these four factors do not limit DOL's selection of JCC operators but instead WIA sections 2887(a)(2)(A) and (B) should be read separately since the provisions are in different sections of WIA. That argument goes against the well settled standard that "a statute is to be construed in a way which gives meaning and effect to all of its parts." Meeks v. West, 216 F.3d 1363, 1367 (Fed. Cir. 2000). The Government offers no explanation here as to why the WIA sections should be read separately.[4]

The Government argues (at 27) that even if 29 U.S.C. § 2887(a)(2)(B) applies, the DOL is entitled to discriminate against large businesses. The plain language of the statute, however, does not support that interpretation. The Government asserts that "eligible" only means "fit to be chosen." However, the Government's interpretation means that large businesses are not "fit to be chosen" since they are absolutely excluded.

Without support, the Government argues (at 26) that the four factors should not be considered exclusive. The Government fails to acknowledge that the legislative history, while allegedly only making "vague references" to cooperation among states and local communities, does not state that the Government favors and encourages small business set asides for JCC operations. Congress made a

---

[4] Contrary to the Government's claims, ResCare addressed this issue below and it is preserved. A1083, A1126-27, A1130, A1138.

deliberate determination in 1998 to narrow and restrict the permissible CICA competition exceptions for JCC procurements.

Based on the Government's arguments, one would think that competition was an evil and that small businesses would be excluded if ResCare's interpretation is adopted. Allowing large businesses to compete does not mean small businesses cannot bid on and receive awards. Genisco Tech. Corp. v. Stone, 793 F. Supp. 357, 359.

The Government also attempts to interpret the WIA through the prism of various policy arguments. The Government argues (at 29, 31) that a long history of Congressional support for small business, established well before the present WIA took effect, means that the Government's interpretation must prevail. But policy arguments cannot overcome the WIA's plain language. Further, Congress had policy goals specific to the Job Corps program effectuated in the WIA.

ResCare has never argued that a small business cannot receive award or that small business should be excluded. Congress, however, in the WIA had specific concerns regarding JCC procurements and the need to ensure the greatest possible competition among eligible entities. Those highly specialized concerns must take precedence over Government wide general small business goals.

Further, ResCare did not argue that the WIA repealed any portion of CICA, nor does ResCare believe the WIA and CICA cannot be harmonized. Govt. Bf. 29-

21

30, 31.  A specific statute cannot be nullified by a general one.  <u>Morton v. Mancari</u>,

417 U.S. 535, 550-51 (1974).  The 1998 WIA imposes specific and unique Job

Corps factors that were not in place before WIA and are not part of CICA.  As a

result, Congress clearly intended to alter the general CICA rules for JCC contracts

in the WIA.  ResCare is not asking the Court to declare an older law invalid, but is

asking the Court to follow the WIA specific rules for the limited class of JCC

procurements.

## V.    The Agency Conducted an Improper Rule of Two Analysis

ResCare's protest included an alternative argument that DOL's "Rule of

Two" determination was arbitrary and improper because the CO failed to consider

relevant information.

The Rule of Two requires a reasonable expectation that offers would be

obtained from at least two capable small businesses and award will be made at fair

market prices.  FAR 19.502-2(b).  This requires that the agency obtain sufficient

information to support an initial determination of capability.  Here, however, the

agency ignored highly relevant, material information calling into question the

capability and responsibility of small businesses.  The CO unreasonably failed to

consider information too close at hand.

The Rule of Two determination was based on responses received to a

Request for Information ("RFI").  A3059, 3062-64.  Based solely on those

submissions, the agency concluded that there was a reasonable expectation that the agency would receive at least two offers from capable contractors at fair market prices. A3063; Govt. Bf. 7.

DOL made this determination despite the fact that DOL had before it substantial and material evidence that small business contractors have adverse past performance and are otherwise not capable of performing JCC operation contracts. An agency may not apply the Rule where there is not a reasonable expectation of two or more small business concerns capable of performing the work based on poor past performance. Cf. Ruchman & Assocs., Inc., B-275956, 97-1 CPD ¶ 147 (Apr. 23, 1997); Sunrise Int'l Grp., Inc.; Specialized Contract Servs., Inc., B-254875, B-254875.2, 94-1 CPD ¶ 39 (Jan.25, 1994); Espey Mfg. & Elec. Corp., B-254738, B-254738.3, 94-1 CPD ¶ 180 (Mar. 8, 1994); Genisco, 793 F. Supp. at 359.

### A.    The COFC Improperly Excluded Highly Relevant, Material Evidence Necessary For Effective Judicial Review

The COFC erred in failing to consider the relevant Axiom standard when it excluded the Rell & Doran Report and the two Myers declarations. A0013, 0019, 0020; see Axiom, 564 F.3d 1374. The COFC also improperly struck portions of ResCare's briefing that relied on the report and declarations. A0013, 0019.

This evidence is material to ResCare's substantive protest and is necessary for effective judicial review. A0013, 0019, 0020. The Report and declarations

23

show that small businesses lack capability and adequate past performance to perform the critical JCC contracts.  The DOL CO knew or should have known the contents of the Report, the data used to prepare the Report, and the Report conclusions and the facts contained in the declarations since they were based on the DOL's own data.  A1023, 1039.  The DOL could not reasonably stick its head in the sand like an ostrich and ignore this highly relevant material.  It is axiomatic that an agency administrative decision is arbitrary and improper when it ignores relevant evidence already before the agency.  Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000) ("The arbitrary and capricious standard … requires … rational reasoning and consideration of relevant factors."); see also MG Altus Apache Co. v. United States, 102 Fed. Cl. 744, 752 (2012); Vanguard Recovery Assistance v. United States, 99 Fed. Cl. 81, 100 n.19 (2011); Allied Tech. Grp., Inc. v. United States, 92 Fed. Cl. 226, 231 (2010); Seattle Sec. Servs. v. United States, 45 Fed. Cl. 560, 568-69 (1999); Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. 672, 698-700 (2010).

The COFC summarily concluded, contrary to Axiom, that since the declarations and the Report were not part of the AR prepared by DOL, they were not necessary for effective judicial review.  A0020.  The Court, not the agency, is the ultimate adjudicator of the AR.  Under the COFC's analysis, the AR would never be supplemented.

24

DOL failed to consider information that was too close at hand to ignore. The COFC erred in failing to consider this highly relevant evidence necessary to review ResCare's Rule of Two protest. Vanguard, 99 Fed. Cl. at 100 n.19. See also Seattle Sec. Servs., 45 Fed. Cl. at 568-59; Linc Gov't Servs., 96 Fed. Cl. at 698-700.

DOL's own performance data provides strong evidence of future performance. That is why federal agencies are required to include past performance as an evaluation factor in almost all federal procurements. See, e.g., FAR 15.304(c)(3).

The Government argues (at 47-49) that the COFC found these materials unnecessary because they are too general. The declarations and report, however, are specific and provide material evidence. Contrary to the Government's assertions (at 49-50), the report provides a detailed explanation of small business past performance based on historical data maintained by DOL. A1057. The DOL data is especially relevant because all JCCs are held to the same underlying standards. A1050-51.

JCCs operated by small businesses consistently have significantly diminished GED/high school diploma rates and diminished total job placement rates. Students at small business operated centers typically have a much lower

length of stay.  A1037-38 (¶ 18), 1052.  Placement outcomes suffer when students do not stay long enough to learn and achieve credentials.  Id.

Similarly, the Report and Declarations are not based on "stale data," (Govt. Bf. 45) but on current JCC performance data maintained by DOL and based on Mr. Myers' extensive experience with JCC procurements.  A1036-40.  The Government's continued use of the term "stale data" is puzzling considering the data is recent; and agencies frequently look back three, five or more years to assess an offerors' past performance.

Allowing a protest to be decided on an AR that does not reflect all of the relevant, material information available to the agency frustrates judicial review.

The Government (at 34-35) asserts that ResCare seeks to impose a much more stringent Rule of Two standard inconsistent with the FAR.  To the contrary (ResCare Bf. 50-51), the COFC has recognized that the Rule "inherently includes an *initial responsibility determination.*"  RhinoCorps Ltd. Co. v. United States, 87 Fed. Cl. 261, 280 (2009) (emphasis added).

The Government asserts (at 33-36) that there is no particular method for determining whether the Rule is satisfied.  Yet, a CO's decision must be based on "sufficient facts" and analysis "so as to establish its reasonableness."  Delex Sys., Inc., B-400403, 2008 CPD ¶ 181 at 10 (Oct. 8, 2008); FAR 19.502-2(a).  See also Med-South, Inc., B-401214, 2009 CPD ¶ 112 (May 20, 2009) ("The use of any

26

particular method of assessing the availability of small businesses is not required *so long* as the agency undertakes reasonable efforts to locate ***responsible*** small businesses." (emphasis added)).  Further, reasonable efforts must be taken "to ascertain whether it is likely that it will receive offers from at least two *responsible* small businesses *capable* of performing the work in question." <u>CYIOS, Inc.</u>, B-402728.3, 2012 CPD ¶ 205 at 7 (Jul. 13, 2012) (emphasis added); <u>EMMES Corp.</u>, B-402245 et al., 2010 CPD ¶ 53 at 5 (Feb. 17, 2010) (the decision must be an informed one).  The CO's decision must take into account "*known information*." <u>Info. Ventures, Inc.</u>, B-294267, 2004 CPD ¶ 205 at 4 (Oct. 8, 2004) (emphasis added)).

Contrary to DOL claims, the relevant factors under "responsibility" explicitly include ***capability*** (FAR 9.104-1(a)-(f)), ***capacity*** (FAR 9.104-1(b)) and past performance (FAR 9.104(c) and 9.104-3(b)). ***Past performance*** is particularly important here in view of WIA's mandate that DOL consider past performance in selecting an entity to operate a JCC.  <u>See</u> 29 U.S.C. § 2887(a)(2)(B) (listing criteria required for awardees).  <u>See also</u> <u>Delex Sys., Inc.</u>, 2008 CPD ¶ 181 at 11 ("information about Delex's actual performance of these ongoing orders should receive some weight in [a Rule of Two] deliberation.").  Thus, under the Rule, the initial determination must consider capability and past performance.

## B.    DOL's Interpretation Is Contrary to the FAR

The Government argues that DOL was not required to consider past performance.  The FAR provisions on which it relies, however, are to the contrary.  See Section V.A, supra.

The Government asserts that the Rule can be satisfied without any detailed analysis of the capability of particular interested small businesses to perform the contract.  Govt. Bf. 38.  This argument, however, brings the Government back to ResCare's position that the DOL should have considered material evidence showing that small businesses lack capability to perform.  The Government asserts that DOL cannot decline to set aside the procurement where there is no evidence in the record that a contract was beyond small business capability.  Id.  ResCare submitted substantial evidence demonstrating small business capability concerns that were disregarded by the CO and then the COFC.  The Government asserts that the actual merits of a particular individual small business are not dispositive.  ResCare concurs.  The question is whether the CO had before her substantial evidence that small business concerns were not capable of performing.  The Government (at 39-40) asserts that DOL reviewed relevant factors concerning small business capability.  Yet, the Government's own documents show that there was no consideration of small business past performance or historical capability.

The COFC characterized ResCare's arguments as calling for "guilt by association" that "would only have informed a policy judgment." A0019. The COFC concluded that it would not "tar [small businesses] with a brush just because they look like other entities that flunked." A2041 (Tr. 40:13-15). Yet, the fact that the small businesses "look like other entities that flunked" provides a substantial basis for calling into question the DOL's conclusion that it had a reasonable expectation of receiving two or more offers from capable contractors.

The Government argues that the "too close at hand" cases involving past performance under FAR Part 15 are irrelevant. Govt. Bf. 44-45. The Government ignores that the initial responsibility analysis required by the Rule includes capability and past performance and that the RFI actually requested past performance and experience material. A3003, A3007; FAR 19.502-2(a); FAR 9.104(c), 9.104-1(a)-(f), 9.104-3(b).

The Government argues (at 37) that the decisions cited by ResCare (Bf. 53) are inapposite because they deal with decisions not to set aside a procurement and where past performance happened to be a factor that was considered but not required. Those cases, however, provide the standard against which the CO's actions in determining to set aside a procurement are measured. Thus, the decision must be based upon "sufficient facts" and analysis "so as to establish its reasonableness." Delex Sys., Inc., 2008 CPD ¶ 181 at 10; FAR 19.502-2(a)); see

29

also CYIOS, Inc., 2012 CPD ¶ 205 at 7 ("[a]n agency must undertake *reasonable* efforts to ascertain whether it is likely that it will receive offers from at least two *responsible* small businesses *capable* of performing the work in question").

The Government's approach would remove "responsibility" from the analysis contrary to the FAR.  The FAR plainly provides that "responsibility" includes consideration of capability and past performance.  Thus, the CO and Court must consider small business past performance.  The Government's argument that past performance is not relevant is curious since the RFI sought past performance information.  A3003, 3007.

The Blue Ridge CO knew or should have known of the Report but arbitrarily failed to consider the report in the set-aside analysis.  A1039 (¶ 26), 1057.  Some information is too close at hand for an agency to ignore.  A federal official may not "like an ostrich, put his head on the sand …." Nat'l Ass'n of Regulatory Util. Comm'rs v. U.S. Dep't of Energy, 680 F.3d 819, 824 (D.C. Cir. 2012).

The Government argues (at 41) that the statistics used in the Report are irrelevant because they do not predict future actions given the current facts. PlanetSpace, 90 Fed. Cl. at 10.  PlanetSpace is inapposite.  PlanetSpace sought to supplement with general statistics related to the instances where the SBA overturned an agency's responsibility determination to show prejudice.  Id.  In contrast, the Report and Declarations are directly relevant to the substance of

30

ResCare's claim – that the CO's set-aside decision improperly ignored relevant data necessary for any reasonable determination.

In addition to the Report and declaration, DOL should have also considered its own published performance data showing that the performance of small business contractors is consistently the worst among JCC operators and significantly lags behind the other center operators. A1047-51. The COFC should have taken notice of DOL's own data. A1137; A1107-09. The CO improperly ignored this readily available information.

## VI.    The Court Erred in Failing to Grant Relief

The COFC erred in failing to grant ResCare injunctive relief. The Court should have found that ResCare succeeded on the merits, ResCare will suffer irreparable injury if relief is not granted, failure to issue relief will cause significant harm to the JCC students, the Government and third parties will suffer no comparable harm, and the public interest weighs in favor of granting injunctive relief. The Government's brief does not dispute these factors other than success on the merits and ResCare has demonstrated success here.

## CONCLUSION

For the foregoing reasons, ResCare requests that the Court reverse the COFC ruling and grant ResCare Judgment, injunctive relief with an Order

31

prohibiting DOL from restricting competition for the Blue Ridge procurement and

the other relief sought by ResCare.

Dated:  May 28, 2013                    Respectfully submitted,

                                        /s/ Jonathan D. Shaffer
                                        Jonathan D. Shaffer
                                        SMITH PACHTER MCWHORTER PLC
                                        8000 Towers Crescent Drive, Suite 900
                                        Tysons Corner, Virginia 22182
                                        Tel: (703) 847-6280
                                        Fax: (703) 847-6312
                                        Email:  jshaffer@smithpachter.com

                                        *Attorneys for Plaintiff-Appellant*
                                        *Res-Care, Inc.*

*Of Counsel*
Mary Pat Buckenmeyer

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**
**2013-5035**

**RES-CARE, INC.**
**Plaintiff-Appellant**

v.

**UNITED STATES**
**Defendant-Appellee**

**Appeal from the United States Court of Federal Claims in**
**Case No. 1:12-cv-00251, Senior Judge Eric G. Bruggink**

---

## CERTIFICATE OF SERVICE

I hereby certify that this Reply Brief of Plaintiff-Appellant was filed

electronically with the Clerk of Court this 28th day of May 2013.  Notice of this

filing will be sent to Appellee's counsel who is registered with the Court's fling

system at the following address:

Amanda L. Tantum
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel:  (202) 616-8131
Fax:  (202) 305-7643
Email:  amanda.tantum@usdoj.gov

/s/ Jonathan D. Shaffer
Jonathan D. Shaffer
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Tysons Corner, Virginia 22182
Tel: (703) 847-6280
Fax: (703) 847-6312
Email:  jshaffer@smithpachter.com

*Counsel of Record for Plaintiff-Appellant
Res-Care, Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

      X The brief contains 6,876 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

      ☐ The brief uses a monospaced typeface and contains [*state the number* lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

      X  The brief has been prepared in a proportionally spaced typeface using MS Word 2010 in 14-point Times New Roman font, or

      ☐ The brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

/s/ Jonathan D. Shaffer
Jonathan D. Shaffer

*Counsel of Record for Plaintiff-Appellant*
*Res-Care, Inc.*

May 28, 2013
